IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| STATE OF FLORIDA, <br><br> Plaintiff, <br><br> v. <br><br> MIGUEL CARDONA, in his official capacity as Secretary of Education, *et al.*, <br><br> Defendants. | No. 0:23-cv-61188 |

**RESPONSE TO MOTION TO ENFORCE THIS COURT'S ORDER OR TO COMPEL INITIAL DISCLOSURES**

The Department of Education's ("Department") fully dispositive motion to dismiss has been fully briefed for weeks; that briefing presented complete argument on the merits of Florida's claims, such that this Court can decide those claims in either party's favor as pure questions of law; and, given that Florida has brought only structural constitutional challenges and a single claim for review of agency action on an administrative record, discovery would be unwarranted at *any* stage of litigation. Florida nonetheless continues its aggressive push for discovery while this Court considers the pending motion to dismiss and now seeks to depose a non-defendant Department employee who essentially served as a records custodian, even though Florida has not, and cannot, explain any basis for seeking fact discovery in a case presenting only pure questions of law. The Department respectfully submits that there is no need for the Court to consider Florida's motion before resolving the fully briefed motion to dismiss but, if the Court proceeds to consider Florida's motion, it should be denied.

BACKGROUND

In this case, Florida challenges wholesale the accreditation system that has been in place for

more than fifty years, pursuant to which the Department of Education relies on the decisions of private accrediting agencies to ensure that loans and grants issued to students are used to purchase a quality education. Florida's complaint, filed on June 21, 2023 and served on July 6, 2023, claims that private accreditors violate the so-called private nondelegation doctrine and the Appointments Clause of the Constitution by wielding government authority without supervision by a government agency; that the system violates the Spending Clause of the Constitution by placing unclear and coercive conditions on states' receipt of federal funds; and that three Dear Colleague Letters issued by the Department violate the Administrative Procedure Act because they constitute "rules" that were issued in a procedurally defective manner, exceed the Department's authority, and are arbitrary and capricious. ECF No. 1.

Despite the fact that the complaint reads like a law review article asserting purely legal claims, Florida quickly began pressing the Department to engage in discovery. On September 5, 2023, Florida filed a motion asking the Court to "clarify that the parties are obligated to comply with Local Rule 16.1 and Federal Rule of Civil Procedure 26(f)." ECF No. 8. The motion noted the Department's position that "this action is exempt from the requirements of Rule 26 and Local Rule 16.1 because this is 'an action for review on an administrative record' under Rule 26(a)(1)(B)(i)." *Id.* at 1-2. On September 7, the Court entered what the Department understands to be a standard order in this district requiring the parties to file a Joint Scheduling Report, by October 6, 2023. ECF No. 9. That order stated that "[i]nitial disclosures *required under Federal Rule of Civil Procedure 26(a)(1)* must be made at or before the time the parties confer to develop their case management and discovery plan." *Id.* (emphasis added). The following day, the Court denied Florida's Motion for Clarification on the ground that the Department's time to comply with the recently issued order requiring a Joint Scheduling Report had not run. ECF No. 10.

On September 15, 2023, the Department moved to dismiss the complaint. ECF No. 11 (*see*

1

*also* ECF No. 12, Sep. 21, 2023 (errata correcting clerical error)). It argued that the constitutional claims should be dismissed under Rule 12(b)(6) for failure to state a claim. It further argued that the APA claims should be dismissed for lack of jurisdiction under Rule 12(b)(1) because the Letters are not final agency action under the APA, and for failure to state a claim because the Letters were not required to undergo notice and comment, do not exceed the Department's authority, and are not arbitrary and capricious. *Id.* In arguing that the Letters are not final agency action, the Department argued that they do not mark the consummation of any decisionmaking process because the decisionmaking process as to whether Florida schools may change accreditors is in its infancy. It supported this argument, as is permissible for a jurisdictional argument, with a declaration from Christopher Miller, a (non-defendant) regional division chief who attested to the fact that only a handful of Florida schools had sought approval from the Department to change accreditors and how the Department responded to those requests, attaching true and correct copies of the two response letters that had gone out. ECF No. 12-2 at 26-27 & n. 16; ECF No. 12-1 (Miller Decl.). Those letters are from the Department to Florida public colleges and thus are already in Florida's possession.

On October 5, 2023, the parties timely filed a Joint Scheduling Report. ECF No. 16. Regarding discovery, Florida took the position that "[a]lthough its claims are largely legal in nature, there may be some factual development that is necessary for resolution of the case," and it proposed a discovery schedule. *Id.* at 1. The Department's position was that it had filed a dispositive motion presenting pure questions of law, and that the Court should rule on that motion before permitting discovery. The Department explained that circuit precedent provides that discovery should not be permitted until the Department's motion is resolved; that discovery would be particularly wasteful here because the merits of Florida's claims present no factual issues; and that precedent establishes that discovery at any stage of litigation would be inappropriate because this is a case for review of agency action. *Id.* at 2-4. The Department also stated that it "has not served initial disclosures because this matter is exempt under

2

Federal Rule of Civil Procedure 26(a)(1)(B)." *Id.* at 4 n.2. To date, the Court has not entered any additional orders on the topic of discovery.

Florida filed its opposition to the Department's motion on October 10, 2023. ECF No. 19. It argued that the complaint does state a claim as to its constitutional claims, pointing to the allegations of the complaint, statutory and regulatory provisions, and caselaw. Florida did not suggest that there were any factual issues in dispute requiring discovery that would preclude the Court's ruling in its favor on its constitutional claims, consistent with Rule 12(b)(6)'s emphasis on the sufficiency of the factual allegations of the complaint. In response to the Department's argument that the Letters are not final agency action, Florida argued, *inter alia*, that the Letters mark the consummation of the agency's decisionmaking process because they communicate the Department's final views on the matters contained in the Letters, thus it is irrelevant "that many Florida institutions still face an application process." *Id.* at 15-16. Despite making that purely legal argument, Florida alternatively suggested that the Department's submission of the Miller declaration "counsels in favor of denying [the Department's] motion to dismiss so that Florida may conduct further discovery on the issue and probe the contentions in Defendants' declaration." *Id.* at 18. Florida did not specify any further way in which such discovery would be necessary or even useful to defeat the Department's assertion that the Letters were not final agency action.

The Department filed its reply brief in support of its motion to dismiss on October 20, 2023, ECF No. 28, and that motion is now fully briefed and pending with the Court. On October 30, 2023, Florida filed the instant Motion to Enforce this Court's Order or in the Alternative to Require Initial Disclosures. ECF No. 29. Florida seeks to compel the Department to submit initial disclosures, claiming that the Department's failure to do so violates the Court's September 7, 2023 order requiring a Joint Scheduling Report (ECF No. 9). Florida further contends that the Department's failure to comply with the Court's order is prejudicing it by preventing it from deposing Christopher Miller, the

3

Department's declarant, because, Florida speculates, the Department's initial disclosures would identify Mr. Miller as a relevant witness and provide his address or contact information, enabling Florida to serve him with a subpoena. Florida acknowledges that it "is currently exploring other means to locate Mr. Miller's address and serve him with a subpoena." *Id.* at 6 n.2.

## ARGUMENT

I. THE DEPARTMENT DID NOT VIOLATE THIS COURT'S ORDER

As Florida acknowledges, the Court's September 7, 2023 order requiring the parties to file a Joint Scheduling Report by October 6, 2023 stated that "[i]nitial disclosures *required under Federal Rule of Civil Procedure 26(a)(1)* must be made at or before the time the parties confer to develop their case management and discovery plan." ECF No. 9 (emphasis added); *see also* ECF No. 29 at 2 (quoting this portion of the order). The Department has consistently taken the position, including in the parties' subsequently filed Joint Scheduling Report, ECF No. 16 at 4 n.2, that this case is exempt from Rule 26's requirement that the parties exchange initial disclosures because this is "an action for review on an administrative record." Federal Rule of Civil Procedure 26(a)(1)(B). That position is eminently sound, as explained below, but in any event, the Court has not resolved the parties' competing positions as to whether initial disclosures are required in this case, set forth in the Joint Scheduling Report. The Department has not, therefore, violated any Court order.

Florida's argument that the Court, by issuing its September 7 order in the first place, decided that this case is not exempt from initial disclosures, ECF No. 29 at 4, makes no sense in light of the express language contained in that order that only initial disclosures required under Rule 26(a)(1) must be made. Indeed, the Department understands the September 7 order to have been a routine case-management step in this district rather than any substantive decision as to how this case should proceed.

4

## II. THIS CASE IS EXEMPT FROM INITIAL DISCLOSURES BECAUSE IT IS AN ACTION FOR REVIEW ON AN ADMINISTRATIVE RECORD

Florida concedes that this action includes an APA claim, which it further concedes "is governed by the record rule," ECF No. 29 at 5, *i.e.*, the rule requiring that the Court's review of challenged agency action is limited to the administrative record produced by the agency. *See Preserved Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246-47 (11th Cir. 1996) (holding that district court reviewing agency action sits as appellate tribunal and thus "is not 'generally empowered'" to authorize discovery beyond the administrative record). This is therefore "an action for review on an administrative record," making it exempt from initial disclosures under Rule 26(a)(1)(B)(i). Florida first argues that its constitutional claims should be segregated out for purposes of Rule 26(a)(1)(B)(i), ECF No. 29 at 4-5, but that Rule speaks in terms of an "action," not a "claim." Moreover, courts have held that the record-review rule applies to claims alleging constitutional violations, since a contrary rule would "incentivize every unsuccessful party to agency action to allege … constitutional violations to trade in the APA's restrictive procedures" for the Federal Rules of Civil Procedure. *See, e.g.*, *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1237-38 (D.N.M. 2014) ("While a right to judicial review of agency action may be created by a … constitutional provision, once created it becomes subject to the judicial review provisions of the APA unless *specifically* excluded."). Accordingly, courts in this district routinely grant requests by the government to stay discovery in cases challenging agency action such as this one. *See, e.g.*, *Arias v. Vicha*, No. 1:20-cv-24227-MGC, ECF No. 8 (S.D. Fla. Dec. 7, 2020).

Florida next argues that initial disclosures pertaining to its APA claim and defenses are nonetheless required here, despite Rule 26(a)(1)(B)(i), because the Department has "introduced evidence related to the finality of their actions [citing the Miller Declaration], and Florida is entitled to probe the validity of that evidence." ECF No. 29 at 5. This argument ignores the nature of Mr. Miller's declaration and the fact that the evidence introduced through it already was in Florida's possession

5

and is not in dispute.

Mr. Miller's declaration is not a substantive writing introducing, or raising, any factual dispute. On the contrary, it served merely to authenticate two letters the Department sent to Florida colleges approving their requests to change accreditors. *See* Miller Decl., ECF No. 12-1, at 3-16. These letters already were in Florida's possession prior to the Department's filing, and nowhere in any of its filings has Florida contested either the letters themselves or the Department's introduction of them. And for good reason: There is no dispute that the Department has approved two Florida schools' requests to change accreditors. Aside from attaching these letters, the Miller declaration otherwise conveyed only basic facts also not subject to dispute: that there are 89 public postsecondary schools in Florida participating in Title IV; that only eight of those 89 had requested approval to change accreditors; and that six such requests remained pending and under review by the Department. *Id.* at 1. Once again, Florida has not—and cannot—dispute those basic facts regarding its own actions vis-à-vis the Department, so there is nothing to legitimately "probe" in the declaration or ask Mr. Miller about in a deposition.

In addition to the fact that Mr. Miller's declaration did not raise any factual dispute, the information conveyed therein does not even go to the merits of Florida's APA claim, but instead to whether those claims are ripe for review. Indeed, the Court easily could resolve the Department's argument that Florida's APA claim is unripe *without* the Miller declaration. There is no dispute here that Florida law now requires its public postsecondary schools to change accreditors and that a large number of Florida schools will be seeking to do so over the next two years. *See* ECF No. 1, Compl. ¶¶ 19, 107. Florida's APA challenge to the manner in which the Department will review pending and forthcoming requests by Florida schools is thus unripe, as a matter of law, because the relevant decisions have yet to be made. The Court need not rely on the additional context provided in the Miller Declaration to reach that conclusion, since the facts alleged in Florida's complaint disclose that

6

the process of changing accreditors has only just begun. Submission of the declaration therefore cannot justify fact discovery.

Nor is the authority Florida cites helpful to its argument. Florida claims that because the Department "has now made a 'factual attack on subject-matter jurisdiction,'" "'[a] district court must give the plaintiff an opportunity for discovery to probe the facts offered in support of the factual attack on jurisdiction.'" ECF 29 at 2, 5 (quoting *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981)). As the Department explained in its reply in support of its motion to dismiss, ECF No. 28 at 15, a "factual attack" on jurisdiction means that the Department has challenged whether subject matter jurisdiction does, in fact, exist, as opposed to "merely … if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Scarfo v. Ginsberg*, 175 F.3d 957, 961 (11th Cir. 1999). It does not mean there is a *factual dispute* warranting discovery. And *Williamson* merely sets forth the straightforward proposition that a court should not resolve a disputed issue of fact regarding subject-matter jurisdiction without permitting an opportunity for discovery. It says nothing about a situation, as here, where the factual attack on jurisdiction presents no factual dispute.

### III. THE COURT SHOULD DECIDE THE DEPARTMENT'S PENDING DISPOSITIVE MOTION TO DISMSS BEFORE IT PERMITS ANY DISCOVERY, INCLUDING INITIAL DISCLOSURES

The Department's pending, fully briefed, dispositive motion to dismiss provides another reason why the Court should deny Florida's motion. Requiring the Department to provide initial disclosures so Florida can subpoena Mr. Miller for a deposition—the stated need for the disclosures—while the Department's fully briefed dispositive motion remains pending would conflict with clear circuit precedent. "Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should [] be resolved before discovery begins," because "[s]uch a dispute always presents a purely legal question" with "no issues of fact because the allegations … are presumed to be true." *Chudasma v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th

7

Cir. 1997). Permitting discovery on a legally deficient claim "waste[s] the resources of the litigants … delay[s] resolution of disputes between other litigants, squander[s] scarce judicial resources, and damage[s] the integrity and the public's perception of the federal judicial system." *Id.* at 1368; *see also, e.g.*, *Diulus v. American Express Travel Rel. Svcs. Co.*, 823 Fed. Appx. 843, 847 (11th Cir. 2020) ("This court has held that a district court should resolve a motion to dismiss before allowing discovery").[1]

This precedent applies with full force here. The merits of Florida's constitutional claims have been fully briefed by both sides in the motion to dismiss briefing, meaning the Court has before it all the briefing necessary to resolve Florida's constitutional claims in favor of either party. No factual disputes are presented, and no material issues of fact need be resolved, for the Court to determine whether the Higher Education Act's accreditation system for colleges and universities violates the private nondelegation doctrine, the Appointments Clause, or the Spending Clause. Florida's constitutional challenges allege structural violations of the constitution—*i.e.*, facial challenges that routinely are decided as a matter of law and do not turn on the underlying facts in which the dispute arose. In other words, briefing those claims at summary judgment would be functionally identical to the current briefing on the Department's motion to dismiss for failure to state a claim. Florida has not—and cannot—seriously contend that it needs to propound discovery on, *inter alia*, the meaning or application of the Appointments or Spending Clauses. Florida's constitutional claims turn on pure questions of law and simply present no factual issues. Florida's APA claim does not present any disputed issues of fact either, in regard to the Miller declaration (as discussed above), or otherwise. Discovery would thus be particularly wasteful at any phase of this litigation.

---

[1] Florida relies on several district court cases to suggest that the Court should disregard the Eleventh Circuit's holdings in *Chudasma* and *Diulus* and authorize discovery while it decides the Department's dispositive motion. *See* ECF No. 29 at 4 n.2 (relying primarily on *MindbaseHQ LLC v. Google LLC*, 2021 WL 680887, at *2 (S.D. Fla. Feb. 22, 2021)). But the *Mindbase* court granted discovery where a defendant challenged the sufficiency of facts alleged in the complaint—a vastly different scenario where a plaintiff would be given leave to amend—not one, as here, where the entire complaint presents only pure questions of law. Florida has not provided any authority supporting its contention that discovery should proceed before the Department's motion is resolved.

8

Additionally, Florida's attempt to depose Mr. Miller is irreconcilable with its own admission that "Florida's Administrative Procedure Act claim …is governed by the record rule." ECF No. 16 § L. Neither Mr. Miller's declaration, the documents attached thereto, nor any facts he might possibly testify to could have any relevance to Florida's constitutional claims regarding the private nondelegation doctrine, the Appointments Clause, or the Spending Clause. Florida thus necessarily is seeking discovery related to its APA claim challenging the Department's Dear Colleague Letters—despite the fact that extra-record evidence is impermissible in review of an APA challenge—and all before the Department has even produced the administrative record or Florida has claimed it is insufficient.

Florida's motion assumes that, if the Department is ordered to provide initial disclosures, those disclosures necessarily would include Mr. Miller's name and address. But given the nature of the declaration itself and the purpose for which it was submitted, it is not at all clear that Mr. Miller would qualify as an "individual likely to have discoverable information that the disclosing party may use to support its claims or defenses." FRCP 26(a)(1)(A)(i).

Lastly, Florida's own initial disclosures confirm that this case presents pure questions of law. Florida served extremely barebones initial disclosures that underscore the absence of any factual dispute relevant to resolution of this case. *See* Ex. A. Florida indicates that the only documents it may use to support its claims (aside from those provided in the Complaint) include "Documents reflecting institutional costs associated with accreditation," and "Correspondence" between the Department and Florida schools (*i.e.*, the letters attached to the Miller Declaration). Similarly, it identified only two state employees as potential witnesses whom it could call to testify on the "Impact of the challenged laws and policy on Florida colleges." But this purported evidence would all go to Florida's standing, which the Department has not challenged, so costs and impacts of accreditation have no relevance to the legal questions necessary to resolve this case. Although initial disclosures relate, of course, to evidence

9

the disclosing party has in its possession, rather than that it hopes to obtain, the fact that Florida's disclosures are devoid of any information that it would use to support the merits of its claims supports the Department's position that this case presents only pure questions of law.

## CONCLUSION

Given the nature and posture of this case, the Department respectfully submits that there is no need for the Court to resolve Florida's motion before resolving the fully briefed motion to dismiss. In the alternative, if the Court does rule on Florida's motion, it should deny it.

Dated: November 13, 2023          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

 /s/ Kate Talmor
KATE TALMOR
(Maryland Bar)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 305-5267
kate.talmor@usdoj.gov
*Attorneys for Defendants*